IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


RONALD ANTHONY ROBINSON,
      Plaintiff,

vs.                               Case No. 3:06cv403/RV/EMT

OFFICER J.G. DAVIS, et al.,
      Defendants.
_____/

## SIXTH REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon referral from the clerk. On March 20, 2007, the pro se Plaintiff, a state prisoner who is proceeding in forma pauperis in this action, filed a Third Amended Complaint (Doc. 22). Plaintiff alleged that Defendants Barnes and Murphy used excessive force against him, Defendant Davis sexually assaulted him and retaliated against him for filing grievances, and the remaining Defendants failed to protect him from the alleged assault by Davis.[1] The court directed service of the complaint. On January 18, 2008, all Defendants except Defendant Banasco filed a special report and supporting documents, and on January 22, 2008, they filed an amended special report, which was supplemented with two additional affidavits on January 25 (Docs. 102, 105). On April 9, 2008, Defendant Banasco filed a special report and supporting documents (Doc. 115). Plaintiff did not respond to the special reports despite the court's directing him to do so (*see* Doc. 116). On May 15, 2008, the court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, informing the parties of the requirements of materials that may be considered on summary judgment, and informing the parties that the special reports would be construed as motions

---

[1]Plaintiff's complaint also included claims against Officer Handcock and unidentified nurses. On May 7, 2007, the court dismissed Plaintiff's claims against these Defendants, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) (Doc. 31).

for summary judgment as of May 15, 2008, and taken under advisement on or after June 16, 2008 (the "submission date") (Doc. 120).  After conducting discovery and requesting several extensions of time, Plaintiff filed, on September 12, 2008, a response to the summary judgment motions stating that he was unable to defend the motions because he was transferred from Santa Rosa Correctional Institution (SRCI) to another prison and, therefore, was unable to obtain affidavits from inmate witnesses at SRCI (Doc. 141).  Plaintiff additionally stated that Defendants and their co-workers took all of his documents relating to this case and transferred him without his documents (*id.*).

In light Plaintiff's allegations in his response to the summary judgment motions, the undersigned deems it necessary to address whether consideration of Defendants' motions is appropriate at this time.  Rule 56 of the Federal Rules of Civil Procedure provides that if a party opposing the motion shows by affidavit that, for specified reasons, he cannot present facts essential to justify his opposition, the court may:  (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order.  Fed. R. Civ. P. 56(f).  In the instant case, the court set the submission date for the motions as June 16, 2008.  Although Plaintiff filed a document on September 12, 2008, indicating that all of his papers related to this lawsuit had been taken by prison officials prior to his transfer to another prison on July 18, 2008 (*see* Docs. 139, 141), in a motion filed by Plaintiff prior to September 12, Plaintiff stated that although someone took his "report" when he was moved, some of it was returned on July 21, 2008 (*see* Doc. 139).  Furthermore, in his September 12 response, Plaintiff did not request an extension of time to respond to the summary judgment motions, nor did he request assistance from the court in obtaining copies of documents filed in this case, or conducting discovery, despite the fact that Plaintiff was well aware of the availability of all three of these forms of relief since he had previously requested such relief during this litigation (*see* Docs. 108, 109, 123, 124, 127, 128, 131, 133, 139, 140).

Additionally, Plaintiff has failed to show that the inmate affidavits that he states he was unable to obtain were essential to his opposition to the summary judgment motions.  With regard to Plaintiff's failure to protect claims against Defendants Bruner, Dean, Haskins, Marinin, Banasco, and Dickens, the dispositive issue as to those claims, as discussed *infra*, is whether Defendants' responses to Plaintiff's requests for protection were reasonable based upon their knowledge that

Plaintiff's requests were being investigated by other authorities.  Plaintiff previously filed nearly 200 pages of administrative grievances relevant to this issue (*see* Doc. 18, attachments), and he does not allege in his response that other inmates could have provided any additional information relevant to this issue.  Therefore, he has failed to show that additional affidavits are essential to justify his opposition to the summary judgment motions on these claims.  With regard to Plaintiff's excessive force claims against Defendants Davis, Murphy, and Barnes, the dispositive issue as to those claims, as discussed *infra*, is whether Defendants' use of force in each incident was excessive.  Plaintiff provided a description of the officers' conduct and his resulting injuries in his verified amended complaint, and Defendants submitted Plaintiff's medical records as evidence of any physical harm he suffered.  Plaintiff does not allege that other inmates would have provided additional relevant information concerning the officers' conduct or his injuries.  Therefore, he has failed to show that additional affidavits are essential to justify his opposition to the summary judgment motions on these claims.  With regard to Plaintiff's retaliation claims against Defendant Davis, the dispositive issue as to those claims, as discussed *infra*, is whether Davis's non-retaliatory motive was sufficient to provoke either of the allegedly retaliatory consequences, that is, a disciplinary report and an alleged sexual assault.  Plaintiff already submitted three inmate affidavits regarding the disciplinary report, which the court considered in preparing this Report and Recommendation, and Plaintiff does not allege that these inmates or other inmates would have provided additional relevant information concerning the sufficiency of Defendant Davis's reason for provoking either of the allegedly retaliatory acts.  Therefore, he has failed to show that additional affidavits are essential to justify his opposition to Defendant Davis's summary judgment motion on the retaliation claims.  Finally, Plaintiff could have submitted at least his own affidavit attesting to relevant facts in response to the summary judgment motions.  Even without copies of all of the filings in this case or a complete copy of Defendants' special reports, Plaintiff was well aware of the facts and claims involved in this case as this litigation has been ongoing for two years, and there has been regular activity in the case since its commencement.  For the above reasons, Plaintiff has failed to show that he could not present facts essential to justify his opposition to Defendants' motions for summary judgment; therefore, consideration of the motions at this time is just and proper.

Upon review of the summary judgment record, it is the opinion of the undersigned that Defendants' motions for summary judgment should be granted.

I.      FACTUAL BACKGROUND

    A.      Plaintiff's Allegations

Plaintiff alleges the following facts in his Third Amended Complaint.  At the time of the events giving rise to the complaint, Plaintiff was an inmate of SRCI.  In June of 2005, Defendant Davis began calling Plaintiff his "bitch" and commenting that Plaintiff had "a nice fat ass" (Doc. 22 at 7).  This conduct continued, and when Plaintiff asked Davis to stop making the remarks, Davis only increased their frequency (*id.*).  Plaintiff complained to Defendant Bruner, a lieutenant, but Bruner stated that Defendant Davis was not doing anything (*id.*).  In October of 2005, Plaintiff began writing grievances against staff in his dormitory, and staff began retaliating by threatening to stop Plaintiff's food, recreation time, and mail (*id.*).  Additionally, Defendant Davis threatened "to get [Plaintiff] alone" (*id.*).  Plaintiff states that the staff at SRCI characterize their behavior as "get[ting an inmate's] mind right" (*id.*).  Plaintiff states he filed grievances and sought protective custody out of fear of what staff, including Defendant Davis, would do next, but his grievances and requests were denied by Defendants Haskins, Marinin, Bruner, Dean, Banasco, and Dickens to cover up the misconduct by staff (*id.* at 7–7A).  Plaintiff states that on Thursday, January 12, 2006, Defendant Davis retrieved Plaintiff from the recreation officer and strip searched Plaintiff in the shower (*id.* at 7A).  Defendant Davis then put Plaintiff in his cell, put his hand on Plaintiff's rear, and stated he could not wait to put his penis in Plaintiff's rear that weekend (*id.*).  Plaintiff states that Davis was alone when he escorted Plaintiff to his cell even though the DOC rules regarding escorting inmates in CMI custody status require that a minimum of two officers be physically present at the cell whenever the cell door is opened (*id.*).  Plaintiff alleges Defendant Davis engaged in this conduct in retaliation for Plaintiff's filing grievances against him (*id.*).  Plaintiff states he filed grievances concerning the incident with Defendant Davis, but the grievances were denied (*id.* at 7A–7B).  Plaintiff further states that he was taken to the medical department for a check-up, but as soon as the nurse heard that the incident involved Defendant Davis, she terminated the examination and ordered Plaintiff to be returned to his cell (*id.* at 7B).  Plaintiff states that an officer escorted him back to the

dormitory and told Defendant Davis that Plaintiff had "told on him," and Davis responded that he would "fix [Plaintiff] up on the weekend" (*id.*).

The next weekend, in the early morning hours of Sunday, January 22, 2006, Plaintiff went to the medical department to get away from Defendant Davis (*id.*).  Defendants Murphy and Barnes escorted Plaintiff, and they took Plaintiff to the back of the medical department, shoved him to the ground, and threatened to subject him to more harm "to get [his] mind right" or kill him (*id.*). Plaintiff states when he left the dormitory to go to the medical department, he had no physical injuries, but when he arrived at medical, there was blood running down his right leg and his big toe was injured (*id.*).  He states he still has a scar from the injury, and his big toe "steel [sic] comes off" (*id.*).  Plaintiff states the nurse refused to clean his wounds, but the next nurse on duty gave him soap (*id.*).  Plaintiff was then moved to a different dormitory (*id.*).  Two months later, Plaintiff was returned to the dormitory where Defendant Davis was assigned (*id.*).

Plaintiff states unidentified staff interfered with his mail to retaliate against him and stop him from seeking assistance from other persons and organizations outside SRCI (*id.* at 7B–7C).  He additionally states that supervisory officials were aware of Defendant Davis's history of misconduct because other inmates complained of the same misconduct (*id.* at 7C).  Plaintiff submitted an affidavit from Kelvin Frazier, another inmate, who states he filed similar complaints against Defendant Davis for engaging in sexual harassment and threatening to retaliate against him during the same time period as Plaintiff (Doc. 18, attachments at 184–85).  Plaintiff also submitted affidavits from two inmates who state that they heard Defendant Davis threaten to retaliate against Plaintiff and Inmate Frazier for writing grievances against him (*id.* at 186, 187).

Plaintiff claims that Defendant Davis sexually assaulted him and retaliated against him for filing grievances, in violation of the First and Eighth Amendments (Doc. 22 at 8).  He also appears to assert an Eighth Amendment claim against Defendants Murphy and Barnes for the alleged use of excessive force (*id.*).  Plaintiff claims that the remaining Defendants failed to protect him, in violation of the Fourteenth Amendment (*id.*).  Finally, he appears to assert a claim of retaliation against unidentified officers based upon interference with his mail (*id.*).  As relief, he seeks compensatory damages in the amount of $200,000.00 for physical injuries caused by the assaults

by Defendants Davis, Murphy, and Barnes (*id.*).   He also requests that Defendants be "held accountable" for retaliating against him (*id.*).

        B.      Material Facts Asserted by Defendants and Undisputed by Plaintiff

            1.    <u>Defendant Davis</u>

Defendant Davis asserts the following facts, which are undisputed by Plaintiff.  Defendant Davis issued a disciplinary report to Plaintiff on October 23, 2005, for disorderly conduct because Plaintiff was disrupting count by yelling into the vent system to Inmate Kelvin Frazier, who was housed in the adjacent cell, during a formal count (Doc. 99, Ex. B, Ex. N at 1, 26–31).  Defendant Davis was on duty in Plaintiff's dormitory on January 12, 2006 (Doc. 99, Ex. B).  Davis has no recollection of the specific events of that day (*id.*).

Plaintiff's record of segregation (Form 229A) for January 12, 2006, shows that Plaintiff participated in outdoor recreation, which means that he would have been released from his cell and transferred to an outdoor recreation area (Doc. 99, Exs. B, U).  When Plaintiff alleged the sexual assault in grievances to the institutional inspector, a report was sent to the Office of Inspector General and an investigation was opened on January 18, 2006, in Case No. 06-1-0203 (Doc. 99, Exs. R, T).  As part of the investigation, Plaintiff was examined by medical staff on January 18, 2006 (Doc. 99, Ex. S at 30, Ex. T).  The medical records indicate that Plaintiff told the medical staff that he complained to the warden and the inspector that an officer grabbed his penis and rear, and that the incident happened after Plaintiff received a disciplinary report from the same officer three months earlier and a disciplinary report by the officer's friend one month ago (Doc. 99, Ex. S at 30–31).  Plaintiff denied any physical problems from the alleged assault and claimed only "mental problems" resulting from the incident (*id.* at 30).  The medical examination revealed no redness or broken skin, and no bruising (*id.*).  The Inspector General's case was closed on January 20, 2006, and referred back to institutional management when the Inspector General's Office determined that Defendant Davis had conducted a pat search on Plaintiff on January 12, 2006 (Doc. 99, Ex. T).

Defendant Davis submitted an affidavit of James Upchurch, Chief of the Bureau of Security Operations (Doc. 99, Ex. V).  Mr. Upchurch's duties and responsibilities include oversight of all security matters within the DOC (*id.*).  He states that close management custody is the confinement of an inmate apart from the general population for reasons of security or the order and effective

management of the institution, where the inmate, through his behavior, has demonstrated an inability to live in the general population without abusing the rights and privileges of others (*id.*). Many of the inmates in close management status are there due to acts of aggression and violence (*id.*). For this reason alone it is extremely important that frequent and thorough searches be conducted of these inmates and their cells in order to detect contraband, escape paraphernalia, and weapons (*id.*). Close Management I (CMI) is the most restrictive status of close management (*id.*). According to DOC rule 33-602.204, clothed or pat down searches may be conducted at the discretion of security staff to control the introduction and movement of contraband and weapons as well as to prevent escapes (*id.*). Rule 33-602.204(2) authorizes strip searches of inmates upon arrival from any place which presents an opportunity for the passage of contraband (*id.*). DOC training materials describe thirty-four (34) steps used in conducting an appropriate and thorough pat/frisk/clothed body search (*id.*). As noted in Step 30, when conducting searches, officers often overlook the groin area or even avoid it (*id.*). Because subjects are often aware of officers' reluctance to search certain areas of their bodies, such as the groin area, subjects take advantage by hiding contraband there (*id.*). As can be seen from Steps 26–30, a thorough pat down search would include patting and squeezing the buttocks and abdomen area above the groin and a hand search of the groin area (*id.*).

In his affidavit, Defendant Davis states he has always conducted pat and strip searches in accordance with DOC policy and training (Doc. 99, Ex. B). Pat searches may be conducted at any time, particularly when a CMI inmate is reentering his cell having been in another area (*id.*). A pat search would be appropriate exiting or reentering the cell (*id.*). A pat down search requires the officer to conduct a physical inspection (*id.*). The physical inspection of a clothed inmate employs a "pat and squeeze method" to detect contraband and would include an extensive search of the groin area (*id.*). A pat down search would require that Defendant Davis touch Plaintiff in the groin and buttocks area (*id.*). Additionally, close management inmates who participate in recreation may also go through strip searches, both upon leaving and reentering the close management unit before being placed back into their cells (*id.*).

### 2.   Defendants Bruner and Dean

Defendants Bruner and Dean assert the following facts, which are undisputed by Plaintiff. Plaintiff was assigned to close management status at the Close Management I (CMI) level after he

stabbed another inmate with a homemade knife (Doc. 99, Ex. F).  Plaintiff was transferred to SRCI on February 15, 2005 (*id.*).   In October of 2005, Defendant Dean was assigned as Plaintiff's classification officer (*id.*).  As part of Defendant Dean's duties, he prepared reports on Plaintiff for the Institutional Classification Team (ICT) for reviews of Plaintiff's custody status (*id.*).  Defendant Dean did not sit on the ICT for Plaintiff's custody reviews, nor was he a member of the ICT which made decisions on Plaintiff's custody status (*id.*).  As a classification officer, Defendant Dean's only authority with regard to allegations of misconduct and retaliation was to refer the matter to a higher authority for review (*id.*).

In 2005 and 2006, Defendant Bruner was a Correctional Officer Lieutenant at SRCI (Doc. 99, Ex. C).  On October 20, 2005, Plaintiff directed an informal grievance to Defendant Bruner labeled "Grievance of Reprisal," in which Plaintiff claimed that Defendant Davis was threatening him, and he requested protection from Davis (Doc. 18, attachments at 8; Doc. 99, Ex. C).  As supervising shift lieutenant, Defendant Bruner's only authority with regard to Plaintiff's allegations was to make a preliminary inquiry into the matter and then refer it to higher authority (Doc. 99, Ex. C).  Defendant Bruner interviewed Defendant Davis concerning Plaintiff's allegations, and Davis denied that he was harassing or threatening Plaintiff, or that he had engaged in any improper conduct (*id.*).  Defendant Bruner determined that there was no evidence to support Plaintiff's claims and denied Plaintiff's grievance on October 28, 2005 (Doc. 18 attachments at 8; Doc. 99, Ex. C).

Defendant Bruner approved the disciplinary report written by Defendant Davis on October 23, 2005 (Doc. 99, Ex. N at 29).  Defendants Bruner and Dean constituted the disciplinary team (*id.* at 26).  In Plaintiff's written response to the charge, Plaintiff complained that Davis had been making "sexist" remarks to him and other inmates, and Plaintiff argued that Davis wrote the disciplinary report in retaliation for Plaintiff's filing a grievance against him for the improper conduct (*id.* at 30).  In his written statement, Plaintiff stated that he had previously requested protection from Davis, and he repeated this request in his written statement (*id.*).  At the disciplinary hearing on November 1, 2005, Plaintiff's defense to the charge was that Davis wrote the disciplinary report in retaliation for Plaintiff's writing grievances against him (*id.* at 26).  Defendants Bruner and Dean found Plaintiff guilty of the charge and sentenced him to thirty days in disciplinary confinement (*id.*).  At the time of the hearing, Defendants Bruner and Dean were aware that

Plaintiff's continuing complaints against Davis had been referred to the institutional inspector and the warden's office and were not only under review but designated for referral to the Office of Inspector General (Doc. 99, Exs. C, F, K, L; Doc. 18, attachments at 5, 11).

        3.     Defendants Haskins and Marinin

Defendants Haskins and Marinin assert the following facts, which are undisputed by Plaintiff. Defendant Haskins was the Assistant Warden for Programs at SRCI at the time of the events giving rise to this action (Doc. 99, Ex. D). Defendant Marinin was the Major at SRCI (Doc. 99, Ex. E). Defendants Haskins and Marinin first became aware of Plaintiff's allegations of harassment, threats, and retaliation by Defendant Davis in October of 2005, when Plaintiff first began filing grievances about Davis and inquiries were made to respond to the grievances (Doc. 99, Exs. D, E). Defendants Haskins and Marinin were members of the ICT, and both were present at Plaintiff's close management review hearing on October 24, 2005 (Doc. 99, Exs. D, E). The ICT determined that Plaintiff's custody status should remain at CMI (*id.*). At the time of the ICT review, Defendants Haskins and Marinin were aware that actions were underway to review Plaintiff's continuing complaints about Defendant Davis and other officers, including referral to the institutional inspector and the warden's office, and that the complaints had been designated for referral to the Office of Inspector General (*id.*). Unless and until these higher authorities discovered evidence to substantiate any of Plaintiff's complaints, neither Defendant Haskins nor Defendant Marinin had authority to further address Plaintiff's allegations of harassment, threats, and retaliation (*id.*).

        4.     Defendants Dickens and Banasco

Defendants Dickens and Banasco assert the following facts, which are undisputed by Plaintiff. Defendant Banasco was a Correctional Services Assistant Consultant in the Bureau of Inmate Grievance Appeals in the Central Office of the DOC at the time of the events underlying the complaint (Doc. 115, Ex. 1). In that capacity, he reviewed grievance appeals filed by inmates and prepared responses on behalf of the Office of the Secretary (*id.*). During 2005 and 2006, Defendant Banasco reviewed and co-signed various responses to grievances on numerous occasions filed by Plaintiff regarding claims of threats, retaliation, and sexual harassment and assault by Defendant Davis and his superiors and co-workers (*id.*). Banasco's responses were reviewed and co-signed by

supervisory staff (*id.*). Where appropriate, Defendant Banasco either inquired into Plaintiff's claims at the institutional level or referred them to the Office of Inspector General (*id.*). Defendant Banasco states that allegations of physical abuse are routinely referred to the Inspector General's Office as are other allegations of staff misconduct (*id.*). Banasco states he made such referrals in Plaintiff's case, and the referrals were approved by supervisory staff (*id.*).

Defendant Dickens was a Correctional Services Administrator in the Bureau of Inmate Grievance Appeals in the Central Office of the DOC at the time of the events underlying the complaint (Doc. 105, Ex. AA). In that capacity, Defendant Dickens reviewed and co-signed responses prepared by Bureau staff to grievance appeals to the Office of the Secretary (*id.*). During 2005 and 2006, Dickens reviewed and co-signed various responses to grievances on numerous occasions filed by Plaintiff regarding claims of threats, retaliation, and sexual harassment and assault by Defendant Davis and his superiors and co-workers (*id.*). Where appropriate, Defendant Dickens and other Bureau staff either inquired into Plaintiff's claims at the institutional level or referred them to the Office of Inspector General (*id.*). Defendant Dickens states that allegations of physical abuse are routinely referred to the Inspector General's Office as are other allegations of staff misconduct (*id.*). Dickens states either he or other Bureau staff made such referrals in Plaintiff's case (*id.*).

## 5. Defendants Murphy and Barnes

Defendants Murphy and Barnes assert the following facts, which are undisputed by Plaintiff. Defendants Murphy and Barnes were correctional sergeants at SRCI at the time of the events described in the complaint (Doc. 99, Exs. G, H). On January 22, 2006, at approximately 2:00–2:18 a.m., they escorted Plaintiff to the medical infirmary (*id.*, Exs. G, H, W). Plaintiff was admitted to the infirmary, and during his stay, medical staff noted a bruise on Plaintiff's right hand, which was self-inflicted, three (3) abrasions on Plaintiff's right knee which were 2–3 centimeters in length, and a small abrasion on the posterior area of Plaintiff's right ankle (Doc. 99, Ex. S at 28, Ex. X at 12–22, 24–25). Plaintiff's medical records indicate that he told the medical staff that the abrasions to his knee and ankle were from an officer's stepping on the chain of his ankle cuff while he was walking to the medical department (Doc. 99, Ex. X at 16–17). The next day, Plaintiff told the medical staff that he felt sore, and "The officers slammed me out back (pointing to his right knee)" (*id.* at 12–13). No treatment regimen was prescribed (*id.*). Plaintiff remained in the infirmary until approximately

12:35 p.m. the next day, January 23, 2006 (Doc. 99, Ex. X at 9–10).  Plaintiff did not seek further medical attention for his injuries (*id.*).

Defendants Murphy and Barnes state that they have no specific recollection of the specific events of January 22, 2006, but they have never physically abused, threatened, or accidentally injured an inmate during any escort at SRCI (Doc. 99, Exs. G, H).

II.    LEGAL STANDARDS

A.    Summary Judgment Standard

In order to prevail on their motion for summary judgment, Defendants must show that Plaintiff has no evidence to support his case or present affirmative evidence that Plaintiff will be unable to prove his case at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 2553–54, 91 L. Ed. 2d 265 (1986).  If Defendants successfully negate an essential element of Plaintiff's case, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.*  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc.,  477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  *Id.*; *accord* Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  Further, Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  Celotex Corp., 477 U. S. at 324 (quoting Fed. R. Civ. P. 56(e)).  Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *Id.*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by h[is] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting Celotex Corp., 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e))); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).  The Eleventh Circuit has consistently held that conclusory allegations without specific supporting facts have no probative

value, and are legally insufficient to defeat summary judgment.  *See* Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000); Sammons v. Taylor, 967 F.2d 1533, 1544–45 & n.5 (11th Cir. 1992).

Evidence presented by Plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to Plaintiff. Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F.3d 1271, 1282 (11th Cir. 1999).  A motion for summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 322.

B.      First Amendment Retaliation Standard

In his amended complaint, Plaintiff claims that Defendants violated the First Amendment by retaliating against him for filing grievances.  It is well established that the First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech. Crawford-El v Britton, 523 U.S. 574, 588 n.10, 592, 118 S. Ct. 1584, 140 L. Ed. 2d 759 (1998); Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (citations omitted); Adams v. James, 784 F.2d 1077, 1080 (11th Cir. 1986) (citation omitted); *see also* Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986).  "A prisoner can establish retaliation by demonstrating that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment."  Farrow, 320 F.3d at 1248 (internal quotation and citation omitted).  However, broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. Goldsmith v. Mayor and City Council of Baltimore, 987 F.2d 1064, 1071 (4th  Cir. 1993); Flittie v. Solem, 827 F.2d 276, 281 (8th Cir. 1987); Gill v. Mooney, 824 F.2d 192, 194 (2d Cir. 1987).  The prisoner plaintiff must sufficiently allege facts establishing that the actions taken against him were in retaliation for filing lawsuits and accessing the courts.  Wright, 795 F.2d at 968.  He must allege facts showing that the allegedly retaliatory conduct would not have occurred but for the retaliatory motive.  Jackson v. Fair, 846 F.2d 811, 820 (1st  Cir. 1988).  Plaintiff must allege a causal link between the protected activity and the adverse treatment, and there must be at least a "colorable suspicion" of retaliation for a complaint to survive

and proceed into discovery.  <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983).  Such a causal connection may be alleged by a chronology of events that create a plausible inference of retaliation. <u>Cain v. Lane</u>, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988).

"[U]pon a prima facie showing of retaliatory harm, the burden shifts to the defendant official to demonstrate that even without the impetus to retaliate he would have taken the action complained of . . . ."  <u>Hartman v. Moore</u>, 547 U.S. 250, 260, 126 S. Ct. 1695, 64 L. Ed. 2d 441 (2006) (citation omitted); *see also* <u>Mt. Healthy City Bd. of Ed. v. Doyle</u>, 429 U.S. 274, 287 (1977).  In the context of a defendant's motion for summary judgment, however, the plaintiff has the ultimate burden of proof; therefore, the defendant need only point to evidence as to the legitimate reason, and the plaintiff must produce "affirmative evidence from which a jury could find that the plaintiff has carried his or her burden of proving the pertinent motive."  <u>Crawford-El</u>, 523 U.S. at 600 (citing <u>Liberty Lobby, Inc.</u>, 477 U.S. at 256–57).  "The relevant showing . . . must be more than the prisoner's 'personal belief that he is the victim of retaliation.'"  <u>Johnson v. Rodriguez</u>, 110 F.3d 299, 310 (5th Cir. 1997) (quoting <u>Woods v. Edwards</u>, 51 F.3d 577, 580 (5th Cir. 1995)).  Appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory."  <u>Pratt v. Rowland</u>, 65 F.3d 802, 807 (9th Cir. 1995) (citing <u>Sandin v. Conner</u>, 115 S. Ct. 2293, 2299 (1995)).  And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury."  <u>Crawford-El</u>, 523 U.S. at 598 (citation omitted); <u>Harris v. Ostrout</u>, 65 F.3d 912, 916–17 (11th Cir. 1995); *see also* <u>Colon v. Coughlin</u>, 58 F.3d 865, 872 (2d Cir. 1995) (because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).  To defeat a summary judgment motion, a plaintiff need not adduce clear and convincing evidence of improper motive, <u>Crawford-El</u>, 523 U.S. 574, but he must produce evidence from which a jury could find by a preponderance of the evidence, that retaliation was the but-for cause of the challenged action.

"If there is a finding that retaliation was not the but-for cause of the action complained of, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind."  <u>Hartman</u>, 547 U.S. at 260 (citing <u>Mt. Healthy</u>, 429 U.S. at 287); <u>Crawford-El</u>, 523 U.S. at 593.  Indeed, "action colored by some

degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway." Hartman, *supra* (citing Crawford-El, 523 U.S. at 593; Mt. Healthy, 429 U.S. at 285–85). However, when nonretaliatory grounds are in fact insufficient to provoke the adverse consequences, retaliation is subject to recovery as the but-for cause of official action offending the Constitution. *Id.* (citation omitted).

     C.        Eighth Amendment Standard — Excessive Force

     Claims of excessive force by prison officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. The standard applied to Eighth Amendment claims has a subjective and an objective component. Under the subjective component, to sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078, 1084, 89 L. Ed. 2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" Skrtich v. Thornton, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting Whitley v. Albers, 475 U.S. 312, 320–21, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." Hudson v. McMillian, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see also* Whitley, 475 U.S. at 321; Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." Whitley, 475 U.S. at 321 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). That officials followed prison regulations in administering force or restraint provides evidence that they acted in good faith and not to inflict pain. Campbell, 169 F.3d at 1376 (citation omitted). Thus, as summarized in Campbell, "[p]recedent dictates that [the determination whether defendants acted maliciously and sadistically for the very purpose of causing harm] be guided by the five Hudson/Whitley factors outlined above, by

deference to prison officials' punitive judgments, and by this Court's previous holdings that compliance with prison policies evidences officials' good faith."  *Id.*   The Court in Whitley narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

> courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives.  Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain under the standard we have described, the case should not go to the jury.

Whitley, 475 U.S. at 322 (emphasis added).

In addition to the "unnecessary and wanton infliction of pain" standard, referred to as the "subjective component" of the excessive force standard, there exists an "objective component" that determines if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  *See* Wilson v. Seiter, 501 U.S. 294, 303, 111 S. Ct. 2321, 2326, 115 L. Ed. 2d 271 (1991). In situations involving allegations of excessive force, the Supreme Court has abrogated any requirement that the resulting injury be "significant."  Hudson, 503 U.S. at 9.  However, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights."  *Id.* (quotation omitted).  "[Excluded] from constitutional recognition [are] de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  *Id.*, 503 U.S. at 9–10 (quotation marks and citation omitted).  Furthermore, a conclusory allegation that the prisoner suffered serious injury should be discounted, and the absence of further evidence of injury justifies the conclusion that the use of force on the prisoner was minimal.  Brown v. Smith, 813 F.2d 1187 (11th Cir. 1987); Bennett v. Parker, 898 F.2d 1530, 1533 (11th Cir. 1990).

D.     Eighth Amendment Standard — Sexual Abuse

The Eleventh Circuit has recognized that severe or repetitive sexual abuse of a prisoner by a prison official can violate the Eighth Amendment.  Boxer X v. Harris, 437 F.3d 1107, 1111 (11th Cir. 2006) (citations omitted).  "[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society."  *Id.* (citation and quotation omitted).  The Eleventh Circuit concluded

that there is an objective component of the Eighth Amendment inquiry, which requires that the injury be "objectively, sufficiently serious," and a subjective component, which requires the prison official have a "sufficiently culpable state of mind." *Id.* (citations omitted). However, an injury can be "objectively, sufficiently serious" only if there is more than de minimis injury. *Id.* (citing Johnson v. Breeden, 280 F.3d 1308, 1321 (11th Cir. 2002)).

E.        Eighth Amendment Standard — Failure to Protect

The Constitution imposes upon state "officials the duty to 'provide humane conditions of confinement.'"  Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994); *see also* Hudson v. Palmer, 468 U.S. 517, 526–27, 104 S. Ct. 3194, 3200, 82 L. Ed.2 d 393 (1984).  In guaranteeing their safety, officials must "protect prisoners from violence at the hands of other[s]."  Farmer, 511 U.S. at 833; Zatler v. Wainwright, 802 F.2d 397, 400 (11th Cir. 1986). However, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for [state] officials responsible for the victim's safety." Farmer, 511 U.S. at 834.  Thus, to provide a viable complaint on a failure-to-protect claim, Plaintiff must make two showings.  First, he must demonstrate that he is "incarcerated under conditions posing a substantial risk of serious harm."[2] Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993)).  Second, he must show that the defendant prison official had a "culpable state of mind" (was deliberately indifferent) in that he knew of and disregarded "an excessive risk to inmate health or safety."  *Id.*, 511 U.S. at 834.  Put another way, Plaintiff must show that a named Defendant was aware of facts showing that Plaintiff was at a substantial risk of harm, and despite knowing of the risk, Defendant did not take reasonable steps to protect Plaintiff. The known risk of injury must be "a strong likelihood, rather than a mere possibility" before a prison official's failure to act can constitute deliberate indifference.  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation omitted).  Furthermore, merely negligent failure to protect an inmate from attack does not justify liability under section 1983.  *Id.*; Farrow v. West, 320 F.3d 1235, 1245 (11th Cir . 2003).

_____

[2]The Court did not address the question of "[a]t what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes."  511 U.S. at 834 n.3.

F.       Qualified Immunity

Defendants assert they are entitled to qualified immunity from suit in their individual capacities. The doctrine of qualified immunity is a guarantee of fair warning. McElligott v. Foley, 182 F.3d 1248, 1260 (11th Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. Hope v. Pelzer, 536 U.S. 730, 739, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); Conn v. Gabbert, 526 U.S. 286, 290, 119 S. Ct. 1292, 1295, 143 L. Ed. 2d 399 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)); Powell v. Ga. Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. McElligott, 182 F.3d at 1260 (citing United States v. Lanier, 520 U.S. 259, 270, 117 S. Ct. 1219, 137 L. Ed. 2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." Id. at 1194. The Supreme Court has established a two-part test for evaluating a claim of qualified immunity. First, the trial court must determine whether a constitutional right has been violated on the facts alleged. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). The court must assess the facts in a light most favorable to the party asserting the injury. Id.

Second, if a violation has been established, the court must determine whether the right was "clearly established." Id. The very action in question need not have been held unlawful for an official to lose the protection of qualified immunity. Hope, 536 U.S. 739; Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). Officials can still be on notice that their conduct violates established law even in novel factual circumstances, and there is no

requirement that previous cases be "fundamentally" or even "materially" similar. Hope, 536 U.S. at 739. Instead, the law merely must give Defendants "fair warning" that their actions are unconstitutional. *Id.* In light of pre-existing law, the unlawfulness must be apparent. *Id.*; Creighton, 483 U.S. at 640. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Wilson v. Strong, 156 F.3d 1131, 1135 (11th Cir. 1998) (quoting Jenkins v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997)).

In cases where improper motive is an element of the constitutional claim, a defendant is entitled to qualified immunity only when, among other things, "the record indisputably establishes that the defendant in fact was motivated, *at least in part*, by lawful considerations." Stanley v. City of Dalton, Ga., 219 F.3d 1280, 1296 (11th Cir. 2000); *see also* Foy v. Holston, 94 F.3d 1528, 1535 (11th Cir. 1996) ("the record makes it clear that Defendants' acts were actually motivated by lawful considerations without which they would not have acted.").

## III.   CONCLUSIONS OF LAW REGARDING MATERIAL FACTS

### A.   Defendant Davis

Plaintiff claims that Defendant Davis sexually assaulted him in violation of the Eighth Amendment. He additionally claims that Defendant Davis retaliated against him for filing administrative grievances by writing a false disciplinary report on October 23, 2005, and, liberally construing Plaintiff's allegations, by sexually assaulting him on January 12, 2006. Defendant Davis contends he is entitled to summary judgment on Plaintiff's claims of sexual assault and retaliation.

### 1.   Eighth Amendment claim

Viewing the facts in the light most favorable to Plaintiff, Defendant Davis's one-time touching of Plaintiff's rear, even when combined with a threat of sexual battery, was not objectively harmful enough to establish an Eighth Amendment violation. *See, e.g.*, Boxer X, 437 F.3d at 1111 (holding that a female prison guard's alleged solicitation of a male prisoner's manual masturbation, even under the threat of reprisal, did not present more than de minimis injury, and therefore did not give rise to a claim under the Eighth Amendment); Washington v. Harris, 186 Fed. Appx. 865, 866 (11th Cir. 2006) (unpublished) (holding that inmate's allegations that he suffered momentary pain, "psychological injury," embarrassment, humiliation, and fear after he was subjected to officer's

offensive and unwanted touching were de minimis injuries which did not rise to the level of constitutional harms, and although officer's conduct was inappropriate and vulgar, it was not repugnant to humanity's conscience);[3] *see also* Jackson v. Madery, 158 Fed. Appx. 656, 661–62 (6th Cir. 2005) (unpublished) (holding that allegation of rubbing and grabbing of prisoner's buttocks in a degrading manner did not amount to an Eighth Amendment violation); Joseph v. United States Federal Bureau of Prisons, 232 F.3d 901, 2000 WL 1532783, at *1–2 (10th Cir. Oct. 16, 2000) (Table) (unpublished) (holding no Eighth Amendment violation stated where plaintiff alleged prison official "touched him several times in a suggestive manner and exposed her breasts to him"); Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (holding that a few incidents involving verbal harassment, touching, and pressing without consent are not sufficiently serious to establish Eighth Amendment violation); Sharpe v. Costello, No. 1:06cv1493, 2007 WL 1098964, at *4 (M.D. Pa. Apr. 11, 2007) (holding that guard's failed attempt to fondle prisoner and subsequent, isolated instances of verbal harassment did not rise to the level of a constitutional violation); Young v. Poff, No. 04-320, 2006 WL 1455482, at *4 (W.D.N.Y. May 22, 2006) (holding that a single groping incident did not amount to an Eighth Amendment violation); Calhoun v. Vicari, No. 05-4167, 2005 WL 2372870, at *1, *5 (D.N.J. Sept. 26, 2005) (holding that sexual gestures, jokes, touching, and slapping on the buttocks were insufficiently serious to state an Eighth Amendment claim); Williams v. Anderson, No. 03-3254, 2004 WL 2282927, at *1, *4 (D. Kan. Sept. 7, 2004) (finding no Eighth Amendment violation where prison guard grabbed plaintiff's buttocks, exposed his penis to plaintiff, and made crude sexual remarks); Jones v. Culinary Manager II, 30 F. Supp. 2d 491, 493, 497–98 (E.D. Pa. 1998) (holding that allegation that a guard pinned plaintiff to box, ground his pelvis against plaintiff's buttocks, and threatened sex was not sufficiently serious to be an Eighth Amendment violation).   Because the undersigned concludes that Plaintiff failed to show a constitutional violation, Defendant Davis is entitled to summary judgment in his favor on Plaintiff's Eighth Amendment claim.

2.      Retaliation claim

---

[3]The undersigned cites Washington v. Harris only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

Liberally construed, Plaintiff's complaint alleges Defendant Davis retaliated against him by filing the disciplinary report on October 23, 2005, and sexually assaulting him on January 12, 2006. As evidence of Defendant Davis's retaliatory motive, Plaintiff submitted copies of nine grievances he filed concerning Davis, which indicate Davis was aware of the grievances because he was interviewed by prison officials concerning the allegations (*see* Doc. 18, attachments at 5, 8, 9, 20, 21, 23, 25, 28, 30).   Defendants also submitted copies of some of these grievances with their summary judgment materials (Doc. 99, Ex. I at 2a, 4a, 5a, 7b).

As additional evidence of retaliatory motive for the disciplinary report, Plaintiff submitted affidavits of three inmates housed in his dormitory during the relevant time period (Doc. 18, attachments at 184–87).   Inmate Frazier states that Defendant Davis threatened to retaliate against him and Plaintiff for writing grievances against him (*id.* at 184–85).   He additionally states that Davis followed through with this threat by writing a retaliatory disciplinary report against them on October 23, 2005 (*id.* at 185).   Inmate Frazier states that "based on the contents of the grievances," he is convinced that retaliation was the substantial factor motivating the disciplinary report.   The affidavit of Inmate John Bryant, executed on October 28, 2005, states that he heard and observed Defendant Davis subject inmates to religious discrimination, sexual harassment, and verbal threats of retaliation (*id.* at 187).   Inmate Bryant further states that on October 23, 2005, he observed Davis verbally threaten Plaintiff with disciplinary action because he filed grievances against him (*id.*).   The affidavit of Inmate Anthony Kevin Sutton, executed on October 29, 2005, states that he heard Defendant Davis verbally threaten Plaintiff with retaliation for Plaintiff's filing grievances against him (*id.* at 186).   Sutton additionally stated that on October 23, 2005, he "observed . . . heard and witnessed" Davis honor his threat of retaliation by writing a false disciplinary report against Plaintiff (*id.*).   Inmate Sutton states, "[b]ased on the contents of the grievance, I'm convinced that these contents was [sic] the motivating factor" for the disciplinary reports against Plaintiff and Inmate Frazier (*id.*).

 Defendant Davis does not dispute that he wrote the disciplinary report on October 23, 2005. Nor does he dispute that prior to the writing of the disciplinary report on October 23, 2005, he was aware of the October 19 grievance, and prior to the alleged sexual assault on January 12, 2006, he was aware of eight more grievances filed by Plaintiff on October 20, October 28, and November 1.

Defendant Davis disputes that his motive for writing the report was retaliatory and states he wrote the disciplinary report because Plaintiff was disrupting the formal count by yelling into the vent system to the inmate in the neighboring cell (Doc. 102 at 44).  Defendant Davis also disputes that he ever sexually assaulted Plaintiff.

The undersigned concludes that although Plaintiff's allegations in his verified amended complaint and the statements of Inmates Frazier, Bryant and Sutton in their affidavits constitute proof of some retaliatory animus in Defendant Davis's mind when he wrote the disciplinary report on October 23, 2005, Plaintiff has failed to produce sufficient evidence from which a jury could conclude that the nonretaliatory grounds for issuance of the disciplinary report were insufficient to provoke the disciplinary report.  In his verified amended complaint, Plaintiff does not deny that he was yelling to another inmate through a vent during the formal count on October 23, 2005, and although the inmate affidavits state the inmates' personal beliefs that retaliation was the motivating factor behind the disciplinary action and include conclusory assertions that the disciplinary report was false and retaliatory, neither Plaintiff nor any of the other inmates provide facts showing that Plaintiff was not yelling to another inmate through a vent during a formal count on October 23, 2005.  Viewing the facts in the light most favorable to Plaintiff, a jury could not reasonably conclude that the non-retaliatory grounds asserted by Defendant Davis were insufficient to provoke the disciplinary report.  Therefore, Plaintiff's retaliation claim as to the disciplinary report fails for lack of a causal connection.

Likewise, there is insufficient evidence from which a jury could conclude that Defendant Davis's alleged sexual touching on January 12, 2006 was done in retaliation for Plaintiff's filing grievances.  In his verified amended complaint, Plaintiff makes a conclusory allegation that Defendant Davis's motive for the alleged touching was retaliation, but he does not allege any facts that support this conclusion.  Therefore, Defendant Davis is entitled to summary judgment on Plaintiff's retaliation claims.

B.     Defendants Bruner and Dean

Plaintiff's only claim against Defendants Bruner and Dean is that they failed to protect him from harm by Defendant Davis.  As previously discussed to establish a constitutional claim of failure to protect, the summary judgment evidence, viewed in the light most favorable to Plaintiff,

must show (1) facts presenting an objectively substantial risk to Plaintiff and awareness of these facts on the part of Defendants; (2) that Defendants drew the subjective inference from known facts that a substantial risk of serious harm existed; and (3) that Defendants responded in an objectively unreasonable manner. The known risk of injury must be "a strong likelihood, rather than a mere possibility" before a prison official's failure to act can constitute deliberate indifference. In determining subjective knowledge, the court must inquire whether the Defendant was aware of a "particularized threat or fear felt by [the plaintiff]." Carter v. Galloway, 352 F.3d 1346, 1347 n.1 (11th Cir. 2003) (citation omitted).

In support of his claim, Plaintiff relies upon the following allegations in his complaint: (1) Plaintiff complained to Defendant Bruner of sexual remarks by Davis, and Bruner responded that Defendant Davis "was not doing anything," and (2) Plaintiff filed grievances and sought protective custody, but Defendants denied his grievances and requests. As evidence of Defendants' awareness of the risk to Plaintiff's safety, Plaintiff submitted nearly two hundred pages of grievances filed with various prison officials concerning various issues from October 10, 2005 through August of 2006 (see Doc. 18, attachments). The only grievances relevant to his claim against Defendant Bruner are two grievances dated October 20, 2005, in which Plaintiff complained that Davis had made "sex[ist] remarks" for the past two days and derogatory references to Plaintiff's religion, that Davis had threatened to do something to Plaintiff's food and property, and that Plaintiff required protection from Davis (Doc. 18, attachments at 8, 9). Defendant Bruner investigated Plaintiff's complaints and his requests for protection from Davis by interviewing Davis, Davis denied the allegations, and Bruner determined that insufficient evidence existed to support Plaintiff's allegations or justify his request for protection (id.). The only other evidence of Defendant Bruner's awareness of a threat to Plaintiff's safety posed by Davis is the record of the disciplinary hearing on November 1, 2005, in which Plaintiff told the disciplinary team, consisting of Defendants Bruner and Dean, that Davis had made "sexist" remarks, threatened him, and wrote the disciplinary report in retaliation for Plaintiff's filing grievances against him (see Doc. 99, Ex. N at 26–31).

Plaintiff does not dispute that the only action Defendants Bruner and Dean were authorized to take on Plaintiff's allegations and requests for protection, pursuant to their positions in the DOC, was to refer Plaintiff's complaints to a higher authority (Doc. 99, Exs. C, F). Likewise, Plaintiff

does not dispute Defendants Bruner and Dean's statements that they were aware on November 1, 2005, the date of the disciplinary hearing, that Plaintiff's complaints against Davis and requests for protection had been referred to higher authority, namely, the institutional inspector and the warden's office, and Plaintiff's complaints were not only under review but designated for referral to the Office of Inspector General (*id.*).[4]

Taking the facts in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could conclude that Defendants Bruner and Dean were subjectively aware that a substantial risk of serious physical harm to Plaintiff existed.  The evidence shows that Plaintiff notified Defendants Bruner and Dean that Defendant Davis made unspecified sexual remarks and derogatory references to his religion, threatened to do something to his food and take his property, and announced to a third party that Plaintiff was his "bitch" and "hole" and "belonged to [him]." Plaintiff also alerted them, during the disciplinary proceeding, to his belief that the disciplinary report written by Davis was retaliatory, and he requested protection from Davis.  Davis's sexual, emasculating, and derogatory remarks and his threats regarding Plaintiff's food and property provide an insufficient basis to make the inferential leap that a substantial risk of serious physical harm to Plaintiff existed.  To assume that Defendants actually made the inference that the remarks and threats constituted a serious threat would assume too much.  Defendants would have had to read imaginatively all sexual and religious slurs and threatening remarks concerning food and property by officers, that may have intruded on an inmate's peace of mind and caused him to be afraid, to determine whether substantial risks of serious harm exist.  The undersigned does not view the summary judgment record as supporting a contention that Defendants Bruner and Dean drew the

---

[4]The documentary evidence corroborates the fact that as of November 1, 2005, some of Plaintiff's requests for protection had been reviewed by the warden's office and referred to the institutional inspector (Doc. 18, attachments at 5, 11).  On October 19, 2005, Plaintiff submitted a grievance to the warden's office complaining that Defendant Davis asked him if he was still writing grievances about him, and when Plaintiff responded affirmatively, Davis threatened to contaminate Plaintiff's food (Doc. 18, attachments at 5; Doc. 99, Ex. I at 3a).  The warden's office forwarded a copy of the grievance to the institutional inspector and the chief of security for review (*id.*).  On October 28, 2005, Plaintiff submitted a grievance to the warden's office complaining that Defendant Davis threatened to retaliate against him for writing grievances, and requesting protection (Doc. 18, attachments at 11).  The warden's office forwarded a copy of the grievance to the institutional inspector and the chief of security for review (*id.*).  A report was sent to the Office of Inspector General and an investigation was opened in Case No. 05-1-3266 (Doc. 99, Exs. K, L).  The case was closed on November 8, 2005, for lack of investigative leads (*id.*, Ex. L).

inference or should have drawn the inference of a serious threat from Davis's remarks and threats, leaving Plaintiff exposed to any substantial risk of serious physical harm.

Even assuming arguendo that Defendants Bruner and Dean drew the requisite inferences or should have drawn them from known facts, no Eighth Amendment constitutional violation is shown unless Defendants' response was objectively unreasonable.  Taking the facts in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could conclude that Defendants Bruner and Dean failed to take reasonable steps to protect Plaintiff.  Defendant Bruner reasonably responded to Plaintiff's October 20 grievances by investigating his allegations.  In light of Bruner's determination that the allegations were contested by Davis and unsubstantiated by Plaintiff, his failure to take further steps was not objectively unreasonable.  Additionally, when Plaintiff complained of Davis's conduct and requested protection during the disciplinary proceeding on November 1, 2005, it was not unreasonable for Defendants Bruner and Dean to decline to refer Plaintiff's complaints to a higher authority, which was the only action they were authorized to take, in light of their awareness that Plaintiff's complaints against Davis and requests for protection had already been referred to higher authority.  Therefore, Plaintiff cannot establish that the conduct of Defendants Bruner and Dean constituted deliberate indifference.  *See* Doe v. Georgia Department of Corrections, 248 Fed. Appx. 67, 72 (11th Cir. 2007) (unpublished) (immediate commencement of investigatory process into unsubstantiated and contested accusations did not constitute indifferent and objectively unreasonable response to inmate's claims of sexual assault by officer).[5]  Because the undersigned concludes that Plaintiff failed to show a constitutional violation, the court need not proceed further to consider the applicability of the qualified immunity defense.  Accordingly, Defendants Bruner and Dean are entitled to summary judgment in their favor.

C.      Defendants Haskins and Marinin

Plaintiff's only claim against Defendants Haskins and Marinin is that they failed to protect him from harm by Defendant Davis.  In support of his claim, Plaintiff relies upon the allegation in his complaint that he requested protection from the ICT Board, of which Defendants Haskins and

---

[5]The undersigned cites Doe v. Georgia Department of Corrections only as persuasive authority and recognizes that the opinion is not considered binding precedent.  *See* 11th Cir. R. 36-2.

Marinin were members.  Plaintiff does not dispute the statements of Defendants Haskins and Marinin that they first became aware of Plaintiff's allegations of harassment, threats, and retaliation by Defendant Davis in October of 2005, when Plaintiff first began filing grievances about Davis and inquiries were made to respond to the grievances (Doc. 99, Exs. D, E).  Furthermore, Plaintiff does not dispute Defendants Haskins and Marinin's statements that at the time of the ICT review on October 24, 2005, they were aware that actions were underway to review Plaintiff's continuing complaints about Defendant Davis and other officers, including referral to the institutional inspector and the warden's office, and that the complaints had been designated for referral to the Office of Inspector General (*id.*).  Finally, Plaintiff does not dispute that unless and until these higher authorities discovered evidence to substantiate any of Plaintiff's complaints, neither Defendant Haskins nor Defendant Marinin had authority to further address Plaintiff's allegations of harassment, threats, and retaliation (*id.*).[6]

Taking the facts in the light most favorable to Plaintiff, there is insufficient evidence from which a jury could conclude that Defendants Haskins and Marinin failed to take reasonable steps to protect Plaintiff.  When Plaintiff complained of Davis's conduct and requested protection during the ICT proceeding on October 24, 2005, it was not objectively unreasonable for Defendants Haskins and Marinin to decline to refer Plaintiff's complaints to a higher authority, which was the only action they were authorized to take, in light of their awareness that Plaintiff's complaints against Davis and requests for protection had already been referred to higher authority.  Because the undisputed facts do not show deliberate indifference on the part of Defendants Haskins and Marinin, Plaintiff failed to establish a constitutional violation.  Accordingly, Defendants Haskins and Marinin are entitled to summary judgment in their favor.

D.      Defendants Banasco and Dickens

---

[6]The documentary evidence corroborates the fact that as of October 24, 2005, some of Plaintiff's requests for protection had been reviewed by the warden's office and referred to the institutional inspector (Doc. 18, attachments at 5).  On October 19, 2005, Plaintiff submitted a grievance to the warden's office complaining that Defendant Davis asked him if he was still writing grievances about him, and when Plaintiff responded affirmatively, Davis threatened to contaminate Plaintiff's food (Doc. 18, attachments at 5; Doc. 99, Ex. I at 3a).  The warden's office forwarded a copy of the grievance to the institutional inspector and the chief of security for review (*id.*).

Plaintiff's only claim against Defendants Banasco and Dickens is that they failed to protect him from harm by Defendant Davis.  In support of his claim, Plaintiff relies upon the allegation in his complaint that he filed grievances with the Secretary's Office complaining of Davis's conduct and requesting protection.  As additional support, Plaintiff submitted copies of the grievances (*see* Doc. 18, attachments).  This evidence shows that on October 20, 22, and 26, and November 3, 2005, Plaintiff submitted grievances to the Secretary's Office complaining that Defendant Davis was threatening to retaliate against him for writing grievances against him, and stating that he had requested protection but nothing was being done (*id.* at 14–19, 26–27).  Defendants Banasco and Dickens returned the grievances to Plaintiff without action because the grievances did not comply with administrative rules regarding the inmate grievance procedure, either because Plaintiff failed to provide a copy of the formal grievance filed at the institutional level or failed to provide an acceptable reason for bypassing the institutional level, or Plaintiff failed to follow the instruction he received at the institutional level before appealing to the Secretary's Office (*id.*).  Defendants did advise Plaintiff, however, that if he feared for his safety, he needed to notify appropriate staff so immediate action could be taken (*id.* at 15, 19, 27).  On October 26, 2005, Plaintiff appealed the warden's denial of his grievance complaining that Defendant Davis was making sexual remarks to him and threatening to retaliate against him for filing grievances by taking Plaintiff's recreation and filing disciplinary reports (*id.* at 3, 37).  Plaintiff additionally complained that since the warden's denial, Davis had filed a retaliatory disciplinary report (the report which was the subject of the disciplinary hearing on November 1, 2005) (*id.*). Defendants Banasco and Dickens responded that they reviewed the response that Plaintiff received at the institutional level and determined that the response appropriately addressed Plaintiff's concerns (*id.* at 38).  Defendants additionally responded that Plaintiff had not provided sufficient information to warrant a dismissal of the disciplinary report (*id.*).  On November 13 and 15, 2005, Plaintiff appealed the warden's denials of five of his grievances to the Secretary's Office, and he requested protection from Davis in the form of releasing him to open population (*id.* at 55–64).  On December 6, 2005, Defendants Banasco and Dickens denied the appeals on the grounds that the response Plaintiff received at the institutional level appropriately addressed Plaintiff's concerns in that the institutional responses indicated that Defendant Davis had been interviewed by institutional staff and had denied Plaintiff's allegations

(*id.* at 8, 9, 20, 23, 25, 55–64).  Defendants Banasco and Dickens further informed Plaintiff that if he was in fear for his safety, he should notify the appropriate staff at his institution (*id.*).[7]  On December 16, 2005, Plaintiff filed another grievance to the Secretary's Office relating to threats of false disciplinary reports and cell searches in retaliation for Plaintiff's filing grievances (*id.* at 127).  Defendants Banasco and Dickens returned the grievance to Plaintiff without action because the grievance did not comply with administrative rules regarding the inmate grievance procedure because Plaintiff failed to show that he first submitted his grievance at the institutional level or failed to provide an acceptable reason for bypassing the institutional level (*id.* at 128).  Additionally, and regardless of Plaintiff's procedural error, Defendants Banasco and Dickens investigated Plaintiff's allegations for nearly two months, including interviewing Defendant Bruner and collecting other information, and determined that there was no evidence to substantiate Plaintiff's allegations (*id.*).  Defendants did, however, advise Plaintiff that if he feared for his safety and wished to request protection, he must notify appropriate staff at his institution so that immediate action could be taken (*id.*).

Defendants' failure to act on Plaintiff's grievances that did not comply with administrative procedures did not constitute deliberate indifference as it was objectively reasonable for Defendants to require Plaintiff to show that he had first presented his concerns to the appropriate level of administration and to show the response he received at that level before he appealed the response to the Secretary's Office.  Furthermore, Defendants advised Plaintiff that if he feared for his safety, he needed to notify appropriate staff so immediate action could be taken.  Additionally, Defendants' denial of Plaintiff's procedurally proper administrative appeals did not constitute deliberate indifference because the denials were made only after review of the institutional response, which showed that investigations of Plaintiff's allegations were conducted, that his allegations were contested and unsubstantiated, and Plaintiff's allegations had been reported to the Chief of Security at Plaintiff's institution or the Inspector General's Office (*see* Doc. 18, attachments at 3, 8, 9, 23,

---

[7]In light of this instruction, Plaintiff filed several "grievances of reprisal" and requests for protection with the institutional inspector, Cynthia Ledkins (Doc. 18, attachments at 97–99, 104).  The complaints were reported to the Office of Inspector General and assigned Case No. 06-1-0038 (*see id.*; Doc. 99, Exs. O, P).  On January 4, 2006, the case was closed due to lack of investigative leads (Doc. 99, Ex. P).

25, 38, 59–60, 63–64).  To accept Plaintiff's argument that no response to his allegations would have been reasonable unless he was released from close management custody to the open population, which was the response Plaintiff requested in his appeals to the Secretary's Office (*see id.* at 57–64), would empower any prisoner at any time to dictate his custody level.  Penological interests must factor into the calculus of reasonable responses.  *See* Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) ("As judges, we lack carte blanche to impose our own theories of penology on the nation's prisons." (internal citation and quotation omitted)).  Because the undisputed facts do not show deliberate indifference on the part of Defendants Banasco and Dickens, Plaintiff failed to establish a constitutional violation.  Accordingly, Defendants Banasco and Dickens are entitled to summary judgment in their favor.

   E. Defendants Murphy and Barnes

   Plaintiff claims that on January 22, 2006, Defendants Murphy and Barnes engaged in excessive force by shoving him to the ground during an escort to the medical department, resulting in injury to his right knee and big toe.  The parties do not dispute the following facts.  On January 22, 2006, Defendants Murphy and Barnes escorted Plaintiff to the medical department.  The medical staff observed three abrasions on Plaintiff's right knee, approximately 2–3 centimeters in length, and an abrasion on Plaintiff's right ankle.  The medical records did not document an injury to Plaintiff's toe.  The medical staff did not prescribe a treatment regimen for the injuries other than cleaning the abrasions.  Plaintiff was released from the infirmary the next day.  Plaintiff did not seek further medical attention for the injuries.  Defendants do not dispute Plaintiff's assertion that he has a scar on his knee and his big toe "steel [sic] comes off."  The parties sharply dispute what occurred during the escort.  Plaintiff alleges that Defendants Murphy and Barnes shoved him to the ground and threatened more harm "to get [his] mind right" or to kill him.  Defendants Murphy and Barnes dispute the fact that they shoved Plaintiff to the ground or threatened him.  These disputed facts are critical to Plaintiff's Eighth Amendment claim.  *See* Bozeman v. Orum, 422 F.3d 1265, 1271 n.11 (11th Cir. 2005) (explaining that, although words, alone, are not determinative of bad faith on the part of officers in their use of force, "threatening language as part of the totality of the circumstances can be relevant to what is constitutional reasonable," or in the determination of reasonable inferences about the officers' subjective state of mind).  Construing the facts in the light most

favorable to Plaintiff, a reasonable jury could conclude that Defendants Barnes and Murphy shoved Plaintiff to the ground while his legs were shackled, maliciously for the purpose of causing harm; thereby satisfying the subjective component of the Eighth Amendment standard.

However, Defendants contend that even assuming that Plaintiff's allegations demonstrate intentional conduct, Plaintiff has failed to establish that he suffered more than a de minimis injury (*see* Doc. 102 at 56–57). Defendants contend that Plaintiff's only injuries were a small abrasion on his knee and a small abrasion on his ankle, and these injuries, which would be treatable at home by the ordinary citizen, are not objectively, sufficiently serious for Eighth Amendment purposes (*id.*).

In Hudson v. McMillian, the Supreme Court rejected the theory that an inmate who alleges excessive use of force is required to show serious injury in addition to the unnecessary and wanton infliction of pain. 503 U.S. at 10. With respect to the "injury" issue in excessive force cases, it is important to review what the Court said in Hudson in context, and not confuse the extent of injury incurred with the more relevant question of whether the force used was excessive:

> The objective component of an Eighth Amendment claim is [ ] contextual and responsive to "contemporary standards of decency." Estelle, *supra*, 429 U.S. at 103, 97 S. Ct. at 290. For instance, extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society," Rhodes, *supra*, 452 U.S. at 347, 101 S. Ct. at 2399, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, *supra*, 501 U.S. at 298, 111 S. Ct. at 2324 (quoting Rhodes, *supra*, 452 U.S. at 347, 101 S.Ct. at 2399) (citation omitted). A similar analysis applies to medical needs. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *See* Estelle v. Gamble, 429 U.S. at 103–104, 97 S. Ct. at 290–291.

> In the excessive force context, society's expectations are different. When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. *See* Whitley,[ ] *supra*, 475 U.S. at 327, 106 S. Ct. at 1088. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury. Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today. *See* Estelle, *supra*, 429 U.S. at 102, 97 S. Ct. at 290 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the

Eighth Amendment); <u>Wilkerson v. Utah</u>, 99 U.S. 130, 136, 25 L. Ed. 345 (1879) ("[I]t is safe to affirm that punishments of torture . . . and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").

That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  <em>See</em> <u>Johnson v. Glick</u>, 481 F.2d at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"  <u>Whitley</u>, 475 U.S. at 327, 106 S. Ct. at 1088 (quoting <u>Estelle</u>, <em>supra</em>, 429 U.S. at 106, 97 S. Ct. at 292) (internal quotation marks omitted).

<u>Hudson</u>, 503 U.S. at 8–10.  Thus, the relevant inquiry under the objective prong of <u>Hudson</u> is whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.  <em>See</em> <u>Hudson</u>, 503 U.S. at 8.  In <u>Hudson</u>, the Supreme Court held that Hudson's injuries, which included bruises, swelling, loosened teeth, and a cracked dental plate, were not de minimis for Eighth Amendment purposes.  <u>Hudson</u>, 503 U.S. at 10.

The primary Eleventh Circuit cases addressing the issue of whether there was sufficient evidence at the summary judgment stage, including evidence of the plaintiff's injuries, to establish that the defendant officer's use of force was more than de minimis are <u>Skrtich v. Thornton</u>, 280 F.3d 1295 (11th Cir. 2002) and <u>Harris v. Chapman</u>, 97 F.3d 499, 505–06 (11th Cir. 1996).  In <u>Skrtich</u>, the Eleventh Circuit held that the kinds of injuries the prisoner suffered, including rib fractures, back injuries, lacerations to the scalp, and abdominal injuries that required nine days of hospitalization and months of rehabilitation, could not have been the result of a de minimis use of force.  <u>Skrtich</u>, 280 F.3d at 1302.  In <u>Harris</u>, the Eleventh Circuit held that the defendant officer's use of force was more than de minimis where several officers, including the defendant, kicked and beat Harris, and the defendant officer snapped Harris's head back with a towel, slapped him twice in the face, and harassed him with racial epithets, because the kicking and use of the towel caused or exacerbated Harris's back condition.  <em>Id.</em> at 505–06.  In so holding, the court noted that it was a "very close case" as to whether the force used by the defendant officer was de minimis.  <em>Id.</em> at 506.

A comparison of unpublished Eleventh Circuit cases evaluating whether the amount of force, as evidenced by the inmate's injuries, was de minimis is also helpful.  <em>Compare</em> <u>Hasemeier v.</u>

Shepard, 252 F.3d Appx. 282, 284–85 (11th Cir. 2007) (unpublished) (evidence of injury including unconsciousness, cuts, bruises, and broken dental bridge resulting from beating was sufficient to create genuine issue of material fact as to whether officers applied excessive force), *and* Clark v. Argutto, 221 Fed. Appx. 819, 825–26 (11th Cir. 2007) (unpublished) (inmate presented evidence from which jury could conclude that force applied by officer was excessive where officer repeatedly tightened inmate's hand restraint in response to inmate's complaints of pain and numbness and kicked restrained inmate to the floor hard enough that inmate hit his head and became dazed and disoriented, and injuries, including abrasions and nerve damage to inmate's wrist, took several weeks to heal and left scars, a possible cyst, and some pain, numbness, and stinging; while injuries were not severe, they were not de minimis), *with* Johnson v. Moody, 206 Fed. Appx. 880, 885 (11th Cir. 2006) (unpublished) (minor nature of injury suggested that officer's pushing or kicking of metal tray door on inmate's hand was de minimis use of force where medical records belied inmates's claim that his injury was not de minimis because:  (1) he was given a tetanus shot, and he was subsequently treated with bandages and non-prescription pain relievers, (2) his finger was not broken or fractured, (3) there was no evidence that he suffered any permanent injury or debilitating pain, and (4) fact that Johnson made sick call requests for five months after incident did not mean that his subjective complaints of pain were accurate or that his injury was serious), *and* Sepulveda v. Burnside, 170 Fed. Appx. 119, 124 (11th Cir. 2006) (unpublished) (claim that officer on one occasion jerked inmate by the ankle while checking his leg shackles was de minimis use of force).

The case at bar lies between Harris v. Chapman and Johnson v. Moody, assuming, as the court must when there is a genuine dispute of material fact, that Plaintiff has been truthful in his allegations as to the amount of force used and the extent of his injuries.  As previously noted, in Harris, the Eleventh Circuit deemed it a "very close case" as to whether the force used was de minimis and appeared swayed by the fact that the defendant's conduct caused or exacerbated the plaintiff's continuing back injury.  In the instant case, there is no evidence that Plaintiff suffered a continuing injury; although he states his "big toe [still] comes off," he does not describe what this means or otherwise indicate that is more than minor discomfort.  Additionally, the nature of the force used and the evidence of injury in the instant case are more similar to those in Johnson.  The slamming of an inmate's hand in a metal tray door, as in Johnson, and pushing an inmate to the floor

while shacked at his ankles are similar in nature.  In <u>Johnson</u>, the inmate was given a tetanus shot, bandages for his finger, and non-prescription pain relievers, and in the instant case, Plaintiff was given soap to clean his abrasions.  In neither case was there evidence of permanent injury or debilitating pain.  Thus, neither Johnson nor Plaintiff required more than "first aid" treatment. Viewing the facts in the light most favorable to Plaintiff, the undersigned concludes that Plaintiff failed to establish more than a de minimis use of force by Defendants Barnes and Murphy. Therefore, assuming that they deliberately tripped Plaintiff, their conduct was malevolent and mean but not unconstitutional.[8]

F.      Additional Retaliation Claims

To the extent Plaintiff asserts that Defendants interfered with his mail in retaliation for his complaints against staff at SRCI, Plaintiff has failed to state a constitutional claim.  Plaintiff alleges the following in his Third Amended Complaint:

> Now I can't get aid to keep more harm form [sic] happen [sic] to me as documents of 229 of [sic] evidence to mach [sic] the camera and grievances, that I Ronald Antony [sic] Robinson, has been [sic] sexaul [sic] assaulted and assaulted. My mail stop [sic] or rejected or just mising [sic] by staff to stop of telling people and organization to assist me in this assaults [sic] by staff and their retaliation.

(Doc. 18 at 7C).  Plaintiff's conclusory claim that officers interfered with his mail in retaliation for complaining about his treatment by officers at SRCI and to cover up such treatment, devoid of any facts suggesting that any of the named Defendants engaged in such conduct, is insufficient to state a retaliation claim under the First Amendment.

G.      Fourteenth Amendment Claim

Finally, Plaintiff claims that Defendants violated the Fourteenth Amendment by violating the "officers code of conduct" and violating his right to be protected from harm (Doc. 18 at 8).

---

[8]The facts of the instant case are also distinguishable from other cases in this district which found more than a de minimis use of force. *See, e.g.,* <u>Huggins v. Johnson</u>, No. 5:05cv248/SPM/MD, 2006 WL 3667254, at *4 (N.D. Fla. Dec. 12, 2006) (repeated punching and kicking of inmate's face and head while he was handcuffed and lying on the ground, causing extreme swelling to face, black eye, chipped tooth, and injury to right knee, could constitute more than de minimis use of force); <u>Borroto v. McDonald</u>, No. 5:04cv165/RH/WCS, 2006 WL 2789152, at *1 (N.D. Fla. Sept. 26, 2006) (beating a handcuffed prisoner and slamming his head on the floor causing pain, with no legitimate purpose other than to cause pain, violates the Eighth Amendment even though the injuries, a few bruises, are not significant).

Defendant contends a substantive due process analysis of Plaintiff's claims is inappropriate because the claims fall under the rubric of other constitutional amendments (Doc. 99 at 49–50).

It is well established that if a constitutional claim is covered by a specific constitutional provision, such as the First or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.  County of Sacramento v. Lewis, 523 U.S. 833, 843, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1998) (citations omitted).  In the instant case, Plaintiff's claims of retaliation and excessive force, sexual assault, and failure to protect are covered by First and Eighth Amendments, respectively, therefore, substantive due process analysis is inappropriate.  See Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (holding that the Due Process clause of the Fourteenth Amendment affords a convicted prisoner no greater protection from excessive force by prison officials than the Eighth Amendment) (citing Whitley, 475 U.S. at 327).  Therefore, Defendants are entitled to summary judgment on Plaintiff's substantive due process claims.

IV.    CONCLUSION

Upon consideration of Plaintiff's claims and the evidence submitted, the undersigned concludes that Defendants's motions for summary judgment should be granted.

Accordingly it is respectfully **RECOMMENDED**:

1.      That Defendants's motions for summary judgment (Docs. 121, 122) be **GRANTED**.

2.      That the clerk enter final judgment in favor of Defendants.

At Pensacola, Florida, this 23rd day of December 2008.

/s/ Elizabeth M. Timothy                                         
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).